## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KARIMA BRYANT, JOSHUA FLANARY, DIEUNIPHERE DELCY, and TELISA WHALEY, individually and on behalf of all others similarly situated,**

      **Plaintiffs,**

**v.**                         **CASE NO.: 8:22-cv-2732-SCB-MRM**

**WALGREEN CO.,**

      **Defendant.**
_____/

### FIRST AMENDED CLASS ACTION COMPLAINT

Named Plaintiffs, Karimah Bryant ("Plaintiff Bryant"),Joshua Flanary ("Plaintiff Flanary"), Dieuniphere Delcy ("Plaintiff Delcy"), and Telisa Whaley ("Plaintiff Whaley"), (collectively "Plaintiffs"), in response to the Court's Order dated December 1, 2022 (*see* Doc. 3), respectfully file this First Amended Class Action Complaint alleging Defendant Walgreen Co. (hereinafter "Walgreens" or "Defendant") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide them and the putative class members with a COBRA notice that complies with the law.

1.      Defendant's COBRA notice violates 29 U.S. Code § 1166, which required Defendant to provide a COBRA notice in accordance with regulations

prescribed by the Secretary of Labor.  Those regulations are set forth in 29 C.F.R. § 2950.606-4(b)(4) *et seq.*

2.     Despite having access to the Department of Labor's Model COBRA form, Walgreens chose not to use the model form— presumably to save Walgreens money by pushing terminated employees away from electing COBRA.[1]

3.     COBRA is a remedial statute that should be interpreted in favor of the employee.   Indeed, the legislative history shows that Congress enacted COBRA in 1986 as a result of the reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay.  The purpose behind its notice requirements is to facilitate and assist individuals in electing continuation coverage should they so choose, not discourage them from doing so as Defendant's does.

4.     Put another way, instead of utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, to save money Walgreens instead opted to break the information into multiple documents, mailed

---

[1] In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." Health Insurance Continuation Coverage Under COBRA, Congressional Research Service, Janet Kinzer, July 11, 2013.

separately under different cover, containing bits and pieces of information on COBRA, both of which are still missing critical information.  In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Walgreens's confusing and piecemeal COBRA rights notification process.

5.      Contrary to Defendant's multi-form system, the applicable regulation mandates use of a single "notice" rather than the dual "notices" Defendant uses. *See* 29 C.F.R. § 2590.606-4(b)(4)(1) ("The administrator shall furnish to each qualified beneficiary, not later than 14 days after receipt of the notice of qualifying event, a <u>notice</u> meeting the requirements of paragraph (b)(4) of this section.") (Emphasis added).

6.      Attached as Exhibit A is Defendant's first COBRA notice sent to the Plaintiffs, which is entitled "COBRA Enrollment Notice."  This document – standing by itself – is violative of 29 C.F.R. § 2590.606-4(b)(4) because it fails to include an address indicating where COBRA payments should be mailed.  It also fails to explain how to actually enroll in COBRA, nor does it bother including a physical election form (both of which are part of the Model form).

7.      To compound the confusion, and contribute further to its violation of 29 C.F.R. § 2590.606-4(b)(4), Defendant sent Plaintiffs a second letter containing information on COBRA in a separate document labeled "Important Information About Your COBRA Continuation Coverage."  While the document labeled "Important Information About Your COBRA Continuation Coverage" contains some of the information missing from the COBRA Enrollment Notice, it does not

3

contain all of it. Thus, Defendant's COBRA notice is not written in a manner calculated to be understood by the average plan participant, such as Plaintiffs.

8. The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiffs. It also caused Plaintiffs economic injuries in the form of lost health insurance, as well as informational injuries.

9. Defendant has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

10. Defendant's COBRA notice and process violates the law. Rather than including all information required by law in a single notice, written in a manner calculated to be understood by the average plan participant, Defendant's COBRA notification process instead offers only part of the legally required information in haphazard and piece-meal fashion.

11. For example, Defendant's COBRA Enrollment Notice sent to Plaintiffs, violates 29 C.F.R. § 2590.606−4(b)(4)(xii) because it fails to include an address indicating where COBRA payments should be mailed.

12. Not only that, consistent with Judge Martinez's recent landmark COBRA notice case decision from *Bryant v. Wal-Mart Stores, Inc., No. 16*-24818-CIV, 2019 WL 3542827, at *5 (S.D. Fla. Apr. 18, 2019), Defendant's COBRA form violates 29 C.F.R. § 2590.606−4(b)(4)(vi) because it fails to sufficiently identify the Plan Administrator or the party responsible for the administration of the plan.

4

13.     As Judge Martinez opined in *Bryant*, without the plan administrator's or the responsible party's name, address, and telephone number, Defendant's notice is not "sufficient to permit the discharged employee to make an informed decision whether to elect coverage."

14.     Furthermore, Defendant's notice violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the COBRA Enrollment Notice *itself*, meaning Exhibit A, never actually explains how to enroll in COBRA.  Nor does it bother including a physical election form (both of which the model Department of Labor form includes). Instead, it merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA, operated by a third-party guised as the Walgreens benefits department, rather than explaining how to actually enroll in COBRA.  The COBRA Enrollment Notice contains no instructions on how to actually enroll if one calls the phone number.  Thus, it defies logic for the same document -- which purports to be a "COBRA Enrollment Notice" -- not to also contain instructions on how to enroll in COBRA.

15.     The COBRA Enrollment notice also violates 29 C.F.R. § 2590.606-4(b)(4)(v), which requires inclusion of the "the date by which the election must be made."  Here, the deadlines included for Plaintiffs Flanary and Delcy are not accurate due to the Government's extension of COBRA enrollment deadlines.

16.     The Cobra Enrollment Notice omissions of the above critical pieces of information, collectively violates 29 C.F.R. § 2590.606−4(b)(4), which requires the plan administrator of a group-health plan to provide a COBRA notice "written in a

5

manner calculated to be understood by the average plan participant." The average plan participant, such as Plaintiffs, cannot understand Defendant's COBRA enrollment notice without information on *how* to elect COBRA, or *where* to send payments.

17. As a result of receiving the COBRA Enrollment Notice, and the subsequent document, Plaintiffs failed to understand the notice and, thus, Plaintiffs could not make an informed decision about their health insurance.

18. Plaintiffs originally wanted to elect COBRA but due, at least in part, to the missing information identified herein were unable to do so. As a result, Plaintiffs suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills due to Walgreens's deficient COBRA forms.

19. In addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Walgreens. Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

20. Not only did Plaintiffs lose their insurance coverage, and also lose their ability to elect continuation coverage, after Plaintiffs lost their insurance they incurred medical bills resulting in further concrete economic injury.

21. Defendant's above violations also subjected Plaintiffs to a risk of real harm to the concrete interest in receiving a notice written in a manner calculated to be understood by the average plan participant, and to elect COBRA continuation

coverage, the very interests that Congress sought to protect with ERISA/COBRA. Namely, Plaintiffs lost their health insurance coverage, and also lost their ability to elect continuation coverage.   Then, they incurred medical bills and expenses causing them economic harm as a result of Defendant's deficient COBRA notice.

22.     Finally, Walgreens's deficient COBRA notice also caused Plaintiffs an informational injury when Walgreens failed to provide them with information to which they were entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

23.     Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  Walgreens injured Plaintiffs and the class members they seek to represent by failing to provide all information in its notice required by COBRA.

24.     As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

25.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

7

26.    Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), which provides that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, <u>where the breach took place</u>, <u>or where a defendant</u> resides or <u>may be found</u>, and process may be served in any other district where a defendant resides or may be found." (Underlines added).

27.    More specifically, venue is proper in this District and in the Tampa Division because Lead Named Plaintiff, Karima Bryant, worked for Defendant in Tampa, Florida at the Walgreens located at 3917 N. Nebraska Avenue, Tampa, Florida 33603.  Ms. Bryant also lives in Tampa, Florida, and received the violative COBRA notice in Tampa, Florida.  Thus, the breaches of ERISA committed with respect to Ms. Bryant took place in this District, and in the Tampa Division, making venue proper here pursuant to 29 U.S.C. § 1132(e)(2).

28.    The same is true for Named Plaintiff Joshua Flanary.  For the times relevant to this lawsuit, he worked for Defendant at the Walgreens located at 105 Mariner Blvd., Spring Hill, FL 34610.  Mr. Flanary lives in Spring Hill, Florida, and received the violative COBRA notice in Spring Hill, Florida.  Thus, the breaches of ERISA committed with respect to Mr. Flanary took place in this District, and in the Tampa Division.  Thus, venue is proper here under 29 U.S.C. § 1132(e)(2).

29.    Named Plaintiff Dieuniphere Delcy also worked in the Tampa Division of this District, specifically at the Walgreens located at 4096 Mariner

8

Blvd, Spring Hill, FL 34609.  She lived, however, in Sumter County, Florida, which Plaintiffs acknowledge is in the Ocala Division of the District.

30.    As to Named Plaintiff Telisa Whaley, she lived and worked in Jacksonville, Florida, where she experienced the breaches at issue herein.

31.    However, besides venue being proper here because the ERISA breaches Lead Named Plaintiff Bryant and Named Plaintiff Flanary experienced occurred in this District (and in the Tampa Division), venue is also proper here because Defendant "may be found" in District.  For example, Defendant may be "found" at the Walgreens store where Ms. Bryant worked, located at 3917 N. Nebraska Avenue, in Tampa, Florida 33603.  Thus, venue proper in both this District and in the Tampa Division.

32.    In fact, Defendant "may be found" at approximately 10 more other Walgreens' locations in the Tampa Bay area, including at the following Tampa, Florida, addresses: 315 W. Platt Street, 1506 W. Kennedy Street, 3518 Henderson Blvd., 1704 W. Hillsborough Ave., 2115 E. Hillsborough Ave., 4651 W. Kennedy Street, 3863 S. Dale Mabry Highway, 3016 W. Gandy Blvd., 6818 N. Armenia, and 4141 W. Hillsborough Ave.  Thus, venue is proper here under 29 U.S.C. § 1132(e)(2).

33.    Plaintiffs are former employees of Walgreens and experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2).

34.    Defendant is an Illinois corporation registered to do business in the State of Florida.

9

35.     Defendant is a Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A).

## FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

36.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

37.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161.

38.     Notice is of enormous importance.   The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

39.     Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

40.     COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. §

1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

41.     To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

42.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

43.     In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).  Such is the case here.  Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

44.     In the alternative, because Walgreens will likely argue that this claim is somehow governed by the Walgreens Health Plan, Plaintiffs are seeking to recover benefits due them under the terms of the Walgreens Health Plan and to

enforce their rights under the terms of the Walgreens Health Plan consistent with 29 U.S.C. § 1132(a)(1)(B).

45. Under ERISA § 502(a)(1)(B), "[a] civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A claim under [§ 502(a)(1)(B)], in essence, is the assertion of a contractual right under a benefit plan," and in order to enforce the terms of the plan under that section, "the participant must first qualify for the benefits provided in that plan." *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999) (quotation marks omitted), *abrogated on other grounds by Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204 (2002).

46. Plaintiffs seek all damages and equitable remedies available under ERISA's civil remedy provision for violation of 29 U.S.C. § 1132(a)(1)(B).

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

47. Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things:

> **a. The Cobra Enrollment Notice (Exhibit A) violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent;**

12

    **b.**    **The Cobra Enrollment Notice (Exhibit A) violates 29 C.F.R. § 2590.606-4(b)(4)(v)(i) because the fails to identify the Plan Administrator;**

    **c.**    **The Cobra Enrollment Notice (Exhibit A) violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes);**

    **d.**    **The COBRA Enrollment notice also violates 29 C.F.R. § 2590.606-4(b)(4)(v), which requires inclusion of the "the date by which the election must be made."  Here, the October 9, 2020, deadline is not accurate due to the Government's extension of COBRA enrollment deadlines due to COVID-19; and,**

    **e.**    **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

48.    As set forth above, contrary to Defendant's multi-form system, the applicable regulation mandates use of a single "notice" rather than the multiform "notices" process Defendant utilizes.  *See* 29 C.F.R. § 2590.606-4(b)(4)(1) ("The administrator shall furnish to each qualified beneficiary, not later than 14 days after receipt of the notice of qualifying event, a <u>notice</u> meeting the requirements of paragraph (b)(4) of this section.")  (Emphasis added).

49.    Attached as Exhibit A is Defendant's first COBRA notice sent to the Plaintiffs.  This document – standing by itself – is violative of 29 C.F.R. § 2590.606-4(b)(4) because it fails to include an address indicating where COBRA

13

payments should be mailed. It also fails to explain how to actually enroll in COBRA, nor does it bother including a physical election form (both of which are part of the Model form).

50. Defendant's COBRA notice confused Plaintiffs and resulted in their inability to make an informed decision as to electing COBRA continuation coverage. In fact, Plaintiffs did not understand the notice and, further, Plaintiffs were unable to elect COBRA because of the confusing and incomplete Walgreens COBRA notice.

51. For example, the COBRA's notice omission of a payment address left him without information on where to mail payment if elected.

52. Similarly, the Cobra Enrollment Notice failed to sufficiently explain how to enroll in COBRA.

53. Defendant's attempt to cure the above deficiencies with a separate COBRA form, or forms, only adds to the confusion. As a result, Plaintiffs could not make an informed decision about health insurance and lost health coverage.

### *Named Plaintiff Kamirah Bryant*

54. Named Plaintiff, Kamirah Bryant, is a former employee of Defendant. She was terminated on approximately March 7, 2020, due to unbearable harassment she experienced in the workplace. Notably, her termination was not due to gross misconduct.

55. As a result of her termination, the Named Plaintiff, Karimah Bryant, experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

14

56. Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff a deficient COBRA enrollment notice.

57. The deficient COBRA notice that Plaintiff Bryant received was violative of COBRA's mandates for the reasons set forth herein.

58. Defendant has in place no administrative remedies Plaintiff Bryant was required to exhaust prior to bringing suit.

59. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

60. Plaintiff Bryant suffered a tangible injury in the form of lost health insurance coverage, and lost continuation health coverage, because of Defendant's deficient COBRA notice.

61. Additionally, Plaintiff Bryant suffered a tangible injury in the form of economic harm when she paid out of pocket for medical expenses, including a hospital bill, because of Defendant's deficient COBRA notice.

62. Not only that, Plaintiff Bryant suffered injury in the form of stress and anxiety created by the loss of her health insurance coverage because of Defendant's deficient COBRA notice.

63. Plaintiff Bryant also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

64. Plaintiff Bryant also suffered a tangible injury because of Defendant's deficient COBRA notice in that she lost control over her own medical treatment,

15

including the ability to continue treating with prior health care providers and the ability to select future health care providers.

65. Plaintiff Bryant lost COBRA coverage and incurred medical expenses because of Defendant's deficient COBRA notice, and because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant.

66. Ultimately, because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant," Plaintiff Bryant's decision not to enroll in COBRA coverage was, at least in part, a result of Defendant's deficient COBRA notice.

67. Finally, Plaintiff Bryant suffered an informational injury as a result of Defendant's deficient COBRA notice because she was never provided all information to which she was entitled by 29 C.F.R. § 2590.606-4(b).

68. No administrative remedies exist as a prerequisite to Plaintiff Bryant's claim. Any purported exhaustion requirement under the Walgreens Health Plan would in, fact, have been futile.

### *Named Plaintiff Joshua Flanary*

69. Named Plaintiff, Joshua Flanary, is a former employee of Defendant. He was terminated on approximately June 22, 2020, notably not due to gross misconduct.

70. As a result of his termination, the Named Plaintiff, Joshua Flanary, experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

16

71. Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff a deficient COBRA enrollment notice.

72. The deficient COBRA notice that Plaintiff Flanary received was violative of COBRA's mandates for the reasons set forth herein.

73. Defendant has in place no administrative remedies Plaintiff Flanary was required to exhaust prior to bringing suit.

74. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

75. Plaintiff Flanary suffered a tangible injury in the form of lost health insurance coverage, and lost continuation health coverage, because of Defendant's deficient COBRA notice.

76. Additionally, Plaintiff Flanary suffered a tangible injury in the form of economic harm when he paid out of pocket for medical expenses because of Defendant's deficient COBRA notice.

77. Not only that, Plaintiff Flanary suffered injury in the form of stress and anxiety created by the loss of his health insurance coverage because of Defendant's deficient COBRA notice.

78. Plaintiff Flanary also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

79. Plaintiff Flanary also suffered a tangible injury because of Defendant's deficient COBRA notice in that he lost control over his own medical treatment,

including the ability to continue treating with prior health care providers and the ability to select future health care providers.

80.    Plaintiff Flanary lost COBRA coverage and incurred medical expenses because of Defendant's deficient COBRA notice, and because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant.

81.    Ultimately, because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant," Plaintiff Flanary's decision not to enroll in COBRA coverage was, at least in part, a result of Defendant's deficient COBRA notice.

82.    Finally, Plaintiff Flanary suffered an informational injury as a result of Defendant's deficient COBRA notice because he was never provided all information to which he was entitled by 29 C.F.R. § 2590.606-4(b).

83.    No administrative remedies exist as a prerequisite to Plaintiff Bryant's claim.  Any purported exhaustion requirement under the Walgreens Health Plan would in, fact, have been futile.

### *Named Plaintiff Delcy Dieuniphere*

84.    Named Plaintiff, Delcy Dieuniphere, is a former employee of Defendant.  She was terminated on approximately December 14, 2018, notably not due to gross misconduct.

85.    As a result of her termination, the Named Plaintiff, Delcy Dieuniphere, experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

86. Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff a deficient COBRA enrollment notice.

87. The deficient COBRA notice that Plaintiff Dieuniphere received was violative of COBRA's mandates for the reasons set forth herein.

88. Defendant has in place no administrative remedies Plaintiff Dieuniphere was required to exhaust prior to bringing suit.

89. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

90. Plaintiff Dieuniphere suffered a tangible injury in the form of lost health insurance coverage, and lost continuation health coverage, because of Defendant's deficient COBRA notice.

91. Additionally, Plaintiff Dieuniphere suffered a tangible injury in the form of economic harm when she paid out of pocket for medical expenses because of Defendant's deficient COBRA notice.

92. Not only that, Plaintiff Dieuniphere suffered injury in the form of stress and anxiety created by the loss of her health insurance coverage because of Defendant's deficient COBRA notice.

93. Plaintiff Dieuniphere also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

94. Plaintiff Dieuniphere also suffered a tangible injury because of Defendant's deficient COBRA notice in that she lost control over her own medical

treatment, including the ability to continue treating with prior health care providers and the ability to select future health care providers.

95.    Plaintiff Dieuniphere lost COBRA coverage and incurred medical expenses because of Defendant's deficient COBRA notice, and because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant.

96.    Ultimately, because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant," Plaintiff Dieuniphere's decision not to enroll in COBRA coverage was, at least in part, a result of Defendant's deficient COBRA notice.

97.    Finally, Plaintiff Dieuniphere suffered an informational injury because of Defendant's deficient COBRA notice because he was never provided all information to which he was entitled by 29 C.F.R. § 2590.606-4(b).

98.    No administrative remedies exist as a prerequisite to Plaintiff Bryant's claim.  Any purported exhaustion requirement under the Walgreens Health Plan would in, fact, have been futile.

### *Named Plaintiff Telisa Whaley*

99.    Named Plaintiff, Telisa Whaley, is a former employee of Defendant. She was terminated on approximately February 5, 2019, notably not due to gross misconduct.

100.    As a result of her termination, the Named Plaintiff, Telisa Whaley, experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

101.   Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff a deficient COBRA enrollment notice.

102.   The deficient COBRA notice that Plaintiff Whaley received was violative of COBRA's mandates for the reasons set forth herein.

103.   Defendant has in place no administrative remedies Plaintiff Whaley was required to exhaust prior to bringing suit.

104.   Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

105.   Plaintiff Whaley suffered a tangible injury in the form of lost health insurance coverage, and lost continuation health coverage, because of Defendant's deficient COBRA notice.

106.   Additionally, Plaintiff Whaley suffered a tangible injury in the form of economic harm when she paid out of pocket for medical expenses because of Defendant's deficient COBRA notice.

107.   Not only that, Plaintiff Whaley suffered injury in the form of stress and anxiety created by the loss of her health insurance coverage because of Defendant's deficient COBRA notice.

108.   Plaintiff Whaley also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

109.   Plaintiff Whaley also suffered a tangible injury because of Defendant's deficient COBRA notice in that she lost control over her own medical treatment,

21

including the ability to continue treating with prior health care providers and the ability to select future health care providers.

110. Plaintiff Whaley lost COBRA coverage and incurred medical expenses because of Defendant's deficient COBRA notice, and because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant.

111. Ultimately, because Defendant failed to provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant," Plaintiff Whaley's decision not to enroll in COBRA coverage was, at least in part, a result of Defendant's deficient COBRA notice.

112. Finally, Plaintiff Whaley suffered an informational injury as a result of Defendant's deficient COBRA notice because he was n09-0p[ever provided all information to which he was entitled by 29 C.F.R. § 2590.606-4(b).

113. No administrative remedies exist as a prerequisite to Plaintiff Bryant's claim. Any purported exhaustion requirement under the Walgreens Health Plan would in, fact, have been futile.

### *Violation of 29 C.F.R. 29 C.F.R. § 2590.606-4(b)(4)(v)*
### *Failure to explain how to enroll in COBRA*

114. The governing statute clearly requires that "[t]he notice … shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the

time period during which the election must be made, and the date by which the election must be made." 29 C.F.R. § 2590.606-4(b)(4)(v).

115. As a threshold matter, Defendant's COBRA Enrollment Notice fails to adequately explain the procedures for electing coverage. The subsequent paperwork also fails to do so. By failing to explain the procedures for electing coverage, Defendant interfered with Plaintiffs' ability to elect COBRA continuation coverage. And, furthermore, by failing to adequately explain the procedures for electing coverage, Walgreens prevented Plaintiffs from understanding their rights under COBRA and how to make an informed decision about continuation coverage.

116. Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, rather than explaining how to actually enroll in COBRA. To further compound the confusion, the Walgreens COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number. The telephone number provided by Walgreens in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc.

117. This "catch-all" number is actually a phone number to a third-party administrator, Alight Solutions (an entity never identified in the COBRA notice).

118. A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot

23

meet the strict informational statutory requirements of 29 C.F.R. § 2590.606-4(b)(4)(v) required of all COBRA notices as to enrollment.

119. This is particularly important in cases, like this, in which a putative class member was not an employee and, thus, lacked access to an employer's online employee portal.

120. Unlike the Walgreens COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.

121. Walgreens's COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606-4(b)(4)(v). Merely telling Plaintiffs and the putative class members to call a generic 1-800 number operated by a third-party and hope they can figure out how to enroll after they call is not what is legally required in a COBRA notice. Instead, the notice itself must contain information on how to enroll. Walgreens's simply does not.

122. Additionally, as explained above, Defendant's COBRA Enrollment notice also violates 29 C.F.R. § 2590.606-4(b)(4)(v), which requires inclusion of the "the date by which the election must be made." Here, the October 9, 2020,

24

deadline is not accurate due to the Government's extension of COBRA enrollment (and payment) deadlines due to COVID-19.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii)*
### *Failure to provide the address to which payments should be sent*

123.    Defendant is specifically required to include in its notice the address to which payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii).  The COBRA Enrollment Notice (Exhibit A) simply does not include this information.

124.    The COBRA Enrollment Notice (Exhibit A) provided to Plaintiffs states "Once enrolled, you'll receive your first bill for the cost of continuing coverage from the date your coverage ended through the end of the month in which you make your COBRA/continuation coverage election.  You must submit your first payment within 45 days of when you elected COBRA/continuation coverage."  Remarkably, however, the notice fails to actually state where payments are to be sent.  This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

125.    Defendant instead dedicates multiple paragraphs to having the employee and Plaintiffs sign up for "Direct Debit" so that Defendant can withdraw monthly payments on its schedule. But nowhere does Defendant provide the address for payment for an employee that chooses not to sign up for Direct Deposit. Defendant states that *only* after Plaintiffs enroll will a bill – which presumably will includes the mailing address for payment – be sent to them.

126. Defendant warns, "Whether you receive the bill in advance or not, it is your responsibility to make your first payment within 45 days of when you elected COBRA coverage." Thus, for those putative class members, like Plaintiffs, that need to maximize the extensions, or maintain control of their finances, the payment address is a critical piece of information that Defendant's notice withholds.

127. Simply put, Defendant's decision to not include the address for payment on the COBRA Enrollment Notice (Exhibit A) confused Plaintiffs because they were unable to locate it on the first document, the document that purported to be Defendant's "COBRA enrollment notice." In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Walgreens's confusing and piecemeal COBRA rights notification process.

128. Defendant's attempt to cure this deficiency by providing a mailing address for payment in subsequent document only demonstrates that Defendant knows this information must be disclosed. But this piecemeal strategy for separating COBRA information does not comport with the law. Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive document, 29 C.F.R. § 2590.606-4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA "notice" (singular), rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

26

129. Without this information, Plaintiffs are left ready and willing, but unable, to properly enroll and maintain continuation coverage.

130. A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. Without information on where to send payment in the COBRA Enrollment Notice (Exhibit A), Plaintiffs were misled as to how to enroll in COBRA.

131. Because of the foregoing deficiencies, Defendant's COBRA notice is insufficient. Defendant has misled Plaintiffs about the material parameters and procedures surrounding their right to elect COBRA coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)*
### *Failure to Identify Plan Administrator*

132. The COBRA notice provided to Plaintiffs omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits. Instead, the third-party administrator, Alight, is identified only in a footer, but that is not what the statute requires. Thus, Plaintiffs were never informed *who* administers the continuation coverage, which is the Defendant entity named here.

133. Defendant's Enrollment Notice merely includes contact information for a "Benefits Support Center" at the end under a heading "For More Information." However, Defendant does not state this is anything more than a call

center, let alone the party responsible under the Plan for the administration of continuing coverage benefits.    Importantly, Defendant does not include the required **_address_** either for the Benefits Support Center, only a phone number and a website.

134.    To further confuse the plan participants, Defendant included a the contact information for a separate entity altogether, Walgreens Boots Alliance, Inc., under the next heading of "Notice of Non-Discrimination."

135.    Defendant was required to provide "in a manner calculated to be understood by the average plan participant … the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i).  Defendant's Notice failed to comply with this fundamental requirement.

136.    Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee, particularly in cases, like this, involving large corporations with multiple entities located throughout the country.

### _Violation of 29 C.F.R. § 2590.606-4(b)(4) Failure to Provide COBRA Notice Written in a Manner Calculated "To Be Understood By the Average Plan Participant"_

137.    By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission from the Cobra Enrollment Notice of how to actually enroll in COBRA, where to send payment, the consequences for untimely payments, failure to

28

include all required explanatory information, the correct deadline to enroll and make payments, and even who the COBRA Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4).

138. Simply put, Defendant's entire multi-form set of attached COBRA documents are not written in a manner calculated "to be understood by the average plan participant."

139. This section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant."

140. The lack of information confused Plaintiffs because they did not understand how to enroll in COBRA online, or by phone given their lack of access to the internal company portal employees used.

141. Without the aforementioned critical pieces, and due to Defendant's decision to divide the required information among multiple COBRA documents, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant." Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

<u>**CLASS ACTION ALLEGATIONS**</u>

142. Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form sent to Plaintiff,**

**during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**.

143. No administrative remedies exist as a prerequisite to Plaintiffs' claims on behalf of the Putative Class.  Even if they did, any efforts related to exhausting such non-existent remedies would be futile.

144. Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

145. Typicality: Plaintiffs' claims are typical of the Class.  The COBRA notice  that Defendant sent to Plaintiffs was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiffs received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

146. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class members, has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

147. Commonality: Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.     Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

30

b. Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c. Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

d. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

148. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

31

149.  Plaintiffs intend to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure.  The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator, Alight Solutions.

## CLASS CLAIM FOR RELIEF
### (COUNT I)
### *Violation of 29 U.S.C. § 1166 for Failure to Comply*
### *With Secretary's Regulations*

150.  Plaintiffs incorporate by reference paragraphs 1-24, and 36-141 from above into this Count.

151.  The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

152.  Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

153.  Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

154.  After Plaintiffs experienced their respective qualifying events, Defendant sent Plaintiffs and the Class Members a COBRA notice in a substantially (if not identical) form.

155.  The COBRA notice that Defendant sent to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) for the reasons set forth herein.

32

156.   Defendant's failure under § 1166(a)(4)(A) to notify the Plaintiffs of their rights as to continuation coverage qualify Plaintiffs for penalties pursuant to 29 U.S.C. § 1132(c)(1).

157.   These violations were material and willful.

158.   Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a), as set forth in 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiffs and other Class Members.

159.   Indeed, other lawsuits were filed as to the same COBRA form during the class period, including here in the Middle District of Florida.  Thus, Defendant knew of, or should have known of, the problems with its COBRA form but used it anyway.

160.   Not only that, but the DOL's Model COBRA notice had been made available in 2004, eighteen years or more prior to Defendant sending the notices to Plaintiffs, making Defendant's violations both reckless and egregious.

### ALTERNATIVE CLASS CLAIM FOR RELIEF
### (COUNT II)
### *Violation of 29 U.S.C. § 1132(a)(1)(B)*

161.   Plaintiffs incorporate by reference paragraphs 1-24, and 36-41 from above into this Count.

162.   In the alternative, because Walgreens will likely argue that this claim is somehow governed by the Walgreens Health Plan, Plaintiffs are seeking to recover benefits due them under the terms of the Walgreens Health Plan and to

enforce their rights under the terms of the Walgreens Health Plan consistent with 29 U.S.C. § 1132(a)(1)(B).

163. Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

164. As a direct and proximate result of the Defendant's ERISA violations described herein, there has been created a case of actual controversy by and between the parties hereto entitling Plaintiffs to a declaration of rights clarifying the benefits to which he is entitled under the Plan

165. Plaintiffs seek all damages and equitable remedies available under ERISA's civil remedy provision for Defendant's violation of 29 U.S.C. § 1132(a)(1)(B), including that the Court enter judgment in favor of Plaintiffs, and award Bennet all past due benefits (including COBRA continuation coverage); and that Plaintiffs recover any and all other relief to which they may be entitled, as well as attorneys' fees and the costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, prays for relief as follows:

    a.  Designating Plaintiffs' counsel as counsel for the Class;

    b.  Issuing proper notice to the Class at Defendant's expense;

34

c.  Declaring that the COBRA notice sent by Defendant to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.  Awarding Plaintiffs any out-of-pocket medical-related expenses and benefits available to them under the Plan;

e.  Reinstatement of Plaintiffs' and the putative class members right to elect coverage for the proscribed period;

f.  Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

g.  Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

h.  To the extent statutory penalties are not awarded, nominal damages;

i.  Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

j.  Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 8th day of December, 2022.

Respectfully submitted,

**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**AMANDA E. HEYSTEK**
Florida Nar Number 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com